McGREGOR W. SCOTT
United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone: (916) 554-2700

Attorneys for the United States



**FILED**

Jun 22, 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:20-CV-01233-TLN-KJN |
| Plaintiff, | |
| v. | ORDER REGARDING CLERK'S ISSUANCE OF WARRANT FOR ARREST OF ARTICLES *IN REM* |
| APPROXIMATELY $41,140.00 IN U.S. CURRENCY, | |
| Defendant. | |

WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on June 18, 2020, in the United States District Court for the Eastern District of California, alleging that the defendant Approximately $41,140.00 in U.S. Currency (hereafter "defendant currency") is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) for one or more violations of 21 U.S.C. §§ 841 *et seq*.;

And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In Rem* and the affidavit of Drug Enforcement Administration Special Agent Richard J. Britt, there is probable cause to believe that the defendant currency so described constitutes property that is subject to forfeiture for such violation(s), and that grounds for the issuance of a Warrant for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

///

IT IS HEREBY ORDERED that the Clerk for the United States District Court, Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the defendant currency.

Dated: 06/22/2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT OF RICHARD J. BRITT

I, Richard J. Britt, being duly sworn under oath, depose and state the following:

1. I am a Special Agent employed by the U.S. Drug Enforcement Administration ("DEA") and have been so employed since April, 2005.

2. I was trained as a DEA Special Agent at the DEA/FBI Academy, Quantico, Virginia. During my training, I received special training in the Controlled Substance Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations respectively.

3. I have received special training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute methamphetamine, cocaine, cocaine base, heroin, marijuana, and other dangerous drugs prohibited by law. I received further training in search and seizure law and many other facets of drug law enforcement. I have received specialized formal training in clandestine laboratory investigations and safety procedures during a 40-hour course at the DEA Academy, Quantico, Virginia. This training involved, but was not limited to: clandestine laboratories, identification of chemicals and other hazardous materials used in the manufacture of methamphetamine, familiarization with equipment and apparatus used in the clandestine laboratory processing. I have also spoken to and worked with experienced federal, state, and municipal narcotic officers regarding the methods and means employed by drug manufacturers and drug traffickers. I have attended a 24-hour Internet Telecommunications Exploitation Program in San Francisco, California. This training involved, but was not limited to: learning updated trends of criminal organizations abilities to more effectively protect themselves from Title III wire interceptions and methods of infiltrating criminal organizations utilizing the Internet. I have attended a one week training conference in Las Vegas, Nevada, dealing primarily with Asian gang culture. This training conference involved, but was not limited to: Asian gang crime within the United States and throughout the world, current trends that Asian gangs are utilizing to launder drug proceeds, the use of casinos for Asian gangs to facilitate drug transactions and large scale credit card fraud, and Asian culture and customs. I have also attended a 24-hour Operation "Jetway" training course, which specialized in airport and hotel narcotics interdiction.

4.　　During the course of my employment as a DEA Special Agent, I have participated in a number of criminal investigations and have gained knowledge and experience by working with senior agents. I have participated in federal and state search warrants involving the seizure of the aforementioned listed controlled substances, the seizure of records relating to the manufacturing and distribution of controlled substances, and other types of evidence that document the activities of drug trafficking organizations and its members. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance and various types of infiltration, including undercover agents, informants, and cooperating sources. Based on these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard narcotics, distribute narcotics, and collect and launder proceeds from narcotic transactions.

5.　　This affidavit is made in support of a warrant for arrest of Approximately $41,140.00 in U.S. Currency ("defendant currency"). The defendant currency was money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended to be used to commit or facilitate a violation of 21 U.S.C. §§ 841, *et seq*. As a result of the foregoing, the defendant currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

### FACTUAL ALLEGATIONS

6.　　The facts in this affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents and detectives who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained as a result of the investigation and I have determined the following:

7.　　On October 31, 2019, Blake Austin Crisler ("Crisler") traveled on United Airlines flight 1781 from Houston, Texas to Sacramento, California, with his origin of travel that day being Jackson, Mississippi. Agents with the DEA received information regarding suspicious travel by Crisler, indicating that he purchased his one-way ticket with $559.00 in cash approximately ten minutes before the flight, with one checked suitcase, as well as Crisler having a significant drug-related criminal

history.

8. Crisler has two previous criminal convictions in two different states for possession of marijuana with intent to distribute—the first in 2009 in Mississippi, the second in 2013 in Georgia. In each criminal case, Crisler was sentenced to three years in state prison. In addition to the two marijuana convictions, Crisler also was arrested several times for violations of state drug laws.

9. In the marijuana case from Georgia, law enforcement conducted a traffic stop of Crisler's rental car as he drove on Interstate 20 outside of Atlanta, Georgia. Crisler was the sole occupant and the rental car was rented by a third party—not Crisler. After a positive dog alert on the Crisler's rental vehicle, law enforcement searched the vehicle and found a gym bag and cardboard box in the trunk. The gym bag contained one pair of jeans and one pair of shorts. Law enforcement unrolled the pair of jeans and found a clear plastic bag containing one pound of processed marijuana. A search of the cardboard box inside the trunk revealed five FedEx envelopes. Law enforcement opened the FedEx envelopes and discovered each envelope contained approximately one pound of processed marijuana, for a total of five pounds. Crisler was arrested for possession of marijuana with intent to distribute and pleaded guilty to drug crimes in Georgia state court.

10. On October 31, 2019, law enforcement responded to the Sacramento International Airport and stood near the baggage area associated with Crisler's incoming fight. While in the baggage area, law enforcement observed Crisler's checked suitcase and a drug detection dog positively alerted to the presence of the odor of narcotics on Crisler's suitcase. Following the positive alert by the trained drug dog, law enforcement removed the suitcase from the carousel area and waited for Crisler to arrive.

11. Law enforcement then brought the suitcase into the indoor baggage carousel area where they observed Crisler standing by the luggage carousel. For approximately twenty minutes, Crisler waited near the baggage carousels attempting to locate his suitcase, while also looking in the direction of law enforcement, who were standing with his suitcase in plain view. Crisler walked over to within five feet of law enforcement and his suitcase, but did not approach law enforcement or query about his luggage located next to the officers. Law enforcement then asked a separate airline traveler in the baggage area if that individual was named "Blake Crisler." This was done loudly and intentionally so that Crisler, who was in the immediate vicinity, could hear law enforcement's question to the individual.

When law enforcement asked the question about the luggage, Crisler immediately exited the terminal and took the bus to the rental car terminal.

12. Approximately twenty minutes later, law enforcement called Crisler at the telephone number associated with his airline reservation. A male voice answered the telephone and identified himself as Blake Crisler. The agent informed Crisler that law enforcement was in possession of a suitcase in his name and asked Crisler if he had any checked luggage. Crisler told the agent that he did, the piece of luggage was his checked item, and gave consent for law enforcement to search his checked luggage. Law enforcement told Crisler that they would call him back after the search.

13. The search of Crisler's suitcase revealed numerous wads and stacks of bundled cash inside a shoebox. The shoebox was found inside a small bag concealed within several items of clothing. Law enforcement then closed the bag containing the shoebox—and cash—and took the items to a separate room in the airport. Once in the room, all the cash was removed from the suitcase. Law enforcement then called Crisler on his cellular phone (the same number used to book his airline reservation) and asked Crisler if his luggage contained any concealed cash. Crisler said that he had maybe "$30,000." Crisler told law enforcement the cash represented proceeds from his work as an "auctioneer". Law enforcement then asked Crisler if he planned to return to the airport terminal; Crisler responded that he was on his way back to the terminal. Crisler further informed law enforcement that he previously exited the terminal after contacting an airline baggage agent about his missing suitcase. The baggage agent purportedly told Crisler that they did not know where the suitcase was located. About an hour after the initial search, Crisler still had not returned to the baggage terminal.

14. Law enforcement presented the cash seized from Crisler's luggage to a dog trained to detect the odor of narcotics. The drug detection dog positively alerted to the presence of the odor of narcotics on the cash seized from Crisler's luggage.

15. A later bank count of the cash seized from Crisler's suitcase totaled $41,140.00 – the defendant currency. The denominations of the seized $41,140 cash was comprised of 5 $50 bills, 2,032 $20 bills, and 25 $10.00 bills.

16. Law enforcement then filled out a receipt for the currency and a copy of the receipt was left within Crisler's suitcase. The suitcase was left with the United Airlines baggage office at the

Sacramento Airport.

17. Approximately five hours after the currency seizure on October 31, 2019, Crisler contacted law enforcement by telephone. The agent informed Crisler he would call him the next morning when another agent was present and would explain the seizure process to him. On November 1, 2019, the agent attempted to contact Crisler three times at the same telephone number from the day before. Each time, the call went directly to voicemail.

18. Based on the foregoing facts, I have probable cause to believe that the defendant currency was intended for the purchase of illegal drugs or is proceeds from drug trafficking. It is respectfully requested that a Warrant for Arrest of Articles *In Rem*, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(3)(b)(i), be issued for the defendant currency listed above.

/s/ Richard J. Britt
_____
RICHARD J. BRITT
Special Agent
Drug Enforcement Administration

Sworn to and Subscribed before me this __20th__ day of June, 2020.

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Reviewed and approved as to form

/s/ Kevin C. Khasigian
KEVIN C. KHASIGIAN
Assistant U.S. Attorney